UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| ALBERT LEE, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 20-cv-3349-MMM |
| CHRISTY SMITH, | ) |
| Defendant. | ) |

### ORDER ON MOTION FOR SUMMARY JUDGMENT

Plaintiff Albert Lee, proceeding *pro se*, filed an action under 42 U.S.C. § 1983 alleging that Defendant Christy Wuellner (Smith) was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment while he was incarcerated at Western Illinois Correctional Center ("Western"). Defendant filed a Motion for Summary Judgment (Doc. 46); Plaintiff responded (Doc. 52); and Defendant replied (Doc. 54). For the reasons stated below, summary judgment is GRANTED in favor of Defendant.

### MATERIAL FACTS

As an initial matter, Plaintiff failed to follow Local Rule 7.1 because he did not respond to Defendant's undisputed material facts. CDIL-LR 7.1(D)(2)(b). "A failure to respond to any numbered fact will be deemed an admission of the fact." *Id.* at (6).

Plaintiff is an inmate in the custody of the Illinois Department of Corrections ("IDOC"). He was housed at Western between April 2016 and January 2019.

Plaintiff testified that he first began experiencing back pain in 2013, while incarcerated at Menard Correctional Center ("Menard"). He was initially prescribed naproxen and ibuprofen for pain management, as needed. Plaintiff also testified that he suffers from subcutaneous scarring of his skin, which is treated by applying a heavy-duty lotion or minerin cream.

Plaintiff's medical records do not reflect any complaints regarding back pain or skin conditions prior to August 16, 2014. Plaintiff claims that he was discharged from the IDOC to the Cook County Jail on February 4, 2004, and as a result, his older medical records are now irretrievable. On August 16, 2014, Plaintiff complained of suffering an injury to his back. Plaintiff was referred to a doctor and prescribed ibuprofen for three days. On August 28, 2014, Plaintiff was prescribed naproxen (375 mg) for two weeks as needed for his back pain.

While at Menard, Plaintiff had an x-ray of his thoracic and lumbar spine on September 15, 2014. Plaintiff saw a doctor at Menard for a follow-up appointment on October 10, 2014. The doctor diagnosed Plaintiff with a degenerative disc disease, but did not prescribe any course of treatment, nor was Plaintiff referred to a specialist. Plaintiff did not see any other medical provider at Menard about his back pain after October 10, 2014, nor did he see medical staff regarding his skin condition.

Plaintiff was transferred to Western on April 27, 2016. Plaintiff did not see a medical provider regarding his complaints of back pain until January 28, 2017, when he was treated by Nurse Kalern and reported having a history of back problems and arthritis. Plaintiff was prescribed ibuprofen (200 mg) three times per day for three days and instructed to do strengthening exercises. He was not referred to a doctor.

On May 14, 2018, Plaintiff saw Defendant, a nurse practitioner at Western, for an annual physical evaluation. During the evaluation, Defendant examined Plaintiff's appearance and gait and performed an evaluation of the areas of the body reflected on the annual physical evaluation form. Plaintiff states that he told Defendant about his back pain, skin condition, and a protrusion near the base of his spine. Plaintiff also states that he alerted Defendant that he was diagnosed with osteoarthritis by Dr. Fuentes at Menard. Plaintiff claims Defendant ignored him, finished her exam,

and told him that he could leave. Defendant did not note any abnormalities during her evaluation. If Plaintiff required additional care for any issue observed and noted during the annual physical evaluation, Defendant would have instructed him to sign up for nurse sick call to be seen by a nurse or referred to a doctor or nurse practitioner. (Doc. 46-5).

According to Plaintiff, he submitted request slips and grievances for medical care while at Western. Defendant was not aware of any grievances or requests to see medical professionals, as it was not part of her job duties and responsibilities as a nurse practitioner to review or provide responses to inmates' requests or grievances. Administrative staff within the Health Care Unit received, reviewed, and responded to such requests and scheduled appointments.

Plaintiff testified that while housed at Western he had to be "careful walking sometimes" to avoid aggravating his back. Plaintiff's medical records do not reflect any complaints regarding back pain or his skin condition between January 28, 2017 and January 17, 2019. Plaintiff was transferred from Western to Shawnee Correctional Center on January 16, 2019.

No doctor has ever recommended surgery related to Plaintiff's back pain, told Plaintiff his condition has worsened because of any treatment he did or did not receive, or recommended any other form of treatment except ice, rest, and pain management.

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, a court "has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). In making this determination, the court must construe the

evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010). However, a court's "favor toward the nonmoving party does not extend to drawing 'inferences that are only supported by speculation or conjecture.'" *Id*. In order to successfully oppose a motion for summary judgment, a plaintiff must do more than raise a "'metaphysical doubt' as to the material facts, and instead must present definite, competent evidence to rebut the motion." *Michael v. St. Joseph Cnty.*, 259 F.3d 842, 845 (7th Cir. 2001) (internal citation omitted).

## ANALYSIS

To establish an Eighth Amendment violation by a prison official for failure to provide adequate medical care, a prisoner "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 105-106 (1976); *Farmer v. Brennan*, 511 U.S. 835, 837 (1994). Deliberate indifference involves a two-part test. The plaintiff must show that (1) the medical condition was objectively serious, and (2) the prison official acted with deliberate indifference to his medical needs, which is a subjective standard. *Sherrod v. Lingle*, 223 F.3d 605, 619 (7th Cir. 2000).

**I.    Plaintiff did not suffer from an objectively serious medical condition.**

Defendant argues that Plaintiff's back pain and skin condition are not objectively serious. "A 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Jackson v. Illinois Medi-Car, Inc.*, 300 F.3d 760, 765-66 (7th Cir. 2002) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1371 (7th Cir. 1997)). A serious medical condition exists where "the failure to treat a prisoner's condition could result in further significant injury or the

unnecessary and wanton infliction of pain." *Id*. at 1373-74. Indications of a serious medical need can include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id*. at 1373.

### A. Plaintiff's back pain

Defendant acknowledges that constant back pain from arthritis and degenerative joint disease has been considered a serious medical condition. *See Vinning v. Feinerman*, 2011 WL 2461843, at *4-5 (S.D. Ill. May 24, 2011). However, back pain resulting in requests for "simple ibuprofen and similar over-the-counter medications" has not been considered a serious medical condition. *Watson-El v. Wilson*, 2010 WL 3732127, at *13 (N.D. Ill. Sept. 15, 2010) (quoting *Guarneri v. Hazzard*, 2010 WL 1064330, at *15 (N.D. N.Y. Mar. 22, 2010)). For instance, in *Hood v. Jefferson*, 2012 WL 3308684 (N.D. Ill. Aug. 10, 2012), the plaintiff had a prescription for Robaxin for back pain related to a stabbing prior to his incarceration. *Id*. at *2. Hood regularly saw a doctor for a renewal of his medication until he missed an appointment due to a court visit. *Id*. In total, Hood went approximately four to six weeks without his Robaxin to treat his back pain. *Id*. at *3. However, at no point did a doctor ever increase Hood's prescription or refer Hood to see a specialist regarding his back pain. *Id*. at *2. At the summary judgment stage, the court determined that Hood's back pain was not an objectively serious medical condition because Hood's pain medication was never increased, and he was not referred to see a specialist or for emergency care at a hospital. *Id*. at *3. In addition, the record reflected that although Hood experienced some pain, he was able to walk and lie down in certain positions. *Id*. As a result, the court found Hood's condition not objectively serious.

Similarly, there is no evidence to support a finding that Plaintiff's back pain was an objectively serious medical condition. The evidence reflects that Plaintiff went years between visits with medical professionals regarding his complaints of back pain. On October 10, 2014, Plaintiff saw a doctor at Menard who diagnosed Plaintiff with degenerative disc disease; however, the doctor did not prescribe any course of treatment, nor was Plaintiff referred to a specialist. Plaintiff did not see any medical provider regarding back pain again until January 28, 2017, two years and three months after his initial diagnosis. Further, there is no evidence that Plaintiff was regularly taking any pain medication during this time. Although Plaintiff was prescribed ibuprofen on January 28, 2017, the prescription was only for a three-day supply. Thus, the record reflects that Plaintiff's back pain was not constant and was treated intermittently with over-the-counter medications as needed.

Additionally, there is no evidence that Plaintiff's back pain impacted his daily activities or caused "chronic and substantial pain." *Verser v. Elyea*, 80 F. App'x 522, 524 (7th Cir. 2003). Plaintiff testified that he was "careful walking sometimes" to avoid aggravating his back; however, there is no evidence that Plaintiff's activities of daily living were impacted. As a result, the Court finds that Plaintiff's condition was mild and did not amount to an objectively serious medical condition when he encountered Defendant for an annual physical evaluation on May 14, 2018.

### B. Plaintiff's skin condition

Defendant also argues that Plaintiff's skin condition was not an objectively serious medical condition. Plaintiff states that his "skin condition is rare, possibly unique, and has never been diagnosed by a medical professional" because his attempts to seek a diagnosis during his incarceration have been thwarted. (Doc. 52 at 5). Plaintiff claims that he suffered from open sores and increased scarring while at Western, but there is no evidence that Defendant was aware of this.

In *Wheeler v. Talbot*, 695 F. App'x 151 (7th Cir. 2017), a plaintiff brought an Eighth Amendment deliberate indifference claim seeking to have his keloids surgically removed. Specifically, the plaintiff complained his keloids caused him itching, oozing, tenderness, and pain. *Id*. at 154. The Seventh Circuit determined that the medical director's examinations showed no signs of infection, oozing, bleeding, or trauma, which reasonably suggested that the keloids were cosmetic problems only. *Id.* As a result, the Seventh Circuit held that since the examinations suggested that the keloids "were cosmetic problems only, [the plaintiff] could not persuade a rational jury that surgery was medically advisable, let alone that a serious condition had been ignored." *Id; see also Leach v. Ritz*, 2019 WL 6713258, at *4 (S.D. Ill. Dec. 10, 2019).

In this case, Plaintiff testified that his keloid skin causes subcutaneous scarring throughout his body and is treated with a heavy-duty lotion or minerin cream; however, there is no evidence that the skin condition impaired his daily activities or required medical intervention other than lotions or creams. In addition, there is no evidence in Plaintiff's medical records that he complained of any issues related to his skin condition while housed at Western. As a result, there is an absence of evidence that Plaintiff's skin condition was an objectively serious medical condition. Therefore, the Court finds that Plaintiff has not established the objective component of his deliberate indifference claim.

## II.    Even if Plaintiff's medical conditions were objectively serious, Defendant was not deliberately indifferent in violation of the Eighth Amendment.

Even if Plaintiff suffered from an objectively serious medical condition, summary judgment would still be warranted because Plaintiff has failed to establish that Defendant was deliberately indifferent his medical needs. To establish the subjective element of a deliberate indifference claim, the plaintiff must show that the prison official acted with a sufficiently culpable state of mind. *Norfleet v. Webster*, 439 F.3d 392, 397 (7th Cir. 2006). Deliberate indifference is

proven by demonstrating that the defendant knows of a substantial risk of harm to an inmate and "either acts or fails to act in disregard of that risk." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). The plaintiff must show that the defendant engaged in more than mere negligence and that his or her conduct approached intentional wrongdoing or criminal recklessness. *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012) (citing *Farmer*, 511 U.S. at 837). Medical negligence is insufficient to demonstrate deliberate indifference. *Foelker v. Outagamie Cnty.*, 394 F.3d 510, 513 (7th Cir. 2005); *Jackson*, 300 F.3d at 765.

Here, Plaintiff complains of a single interaction with Defendant on May 14, 2018. Plaintiff claims that during his annual physical evaluation, he alerted Defendant about his medical needs, but Defendant ignored him and failed to respond to his medical conditions. (Doc. 52 at 7). Plaintiff does not state what medical care he requested or what care Defendant allegedly failed to provide during this encounter. *See Owens v. Duncan*, 788 F. App'x 371, 374-75 (7th Cir. 2019) (upholding dismissal of plaintiff's claims at merit review when plaintiff alleged a single interaction of a denial of pain medication). Other than statements Plaintiff made about his conditions during this single appointment, there is no evidence that Defendant was aware of an objectively serious medical need on May 14, 2018, as Plaintiff's medical records suggested infrequent visits with medical professionals and over-the-counter prescriptions for his back pain and skin condition.

There is also no evidence that Defendant was deliberately indifferent to Plaintiff's serious medical needs during the evaluation on May 14, 2018. During the appointment, Defendant examined Plaintiff's appearance and gait and performed an evaluation of the areas of the body reflected on the annual physical evaluation form. If Plaintiff required further medical care for any issue observed and noted during the evaluation, Defendant would have instructed him to sign up for nurse sick call to be seen by a nurse or referred to a doctor or nurse practitioner. Although

Plaintiff argues that he submitted sick call requests and numerous grievances, Defendant was not aware of his requests or grievances because she was not involved in processing grievances and sick call slips and scheduling appointments. Administrative staff within the Health Care Unit received, reviewed, and responded to such requests.

Even if Plaintiff required treatment for his back pain or skin condition during the annual physical evaluation on May 14, 2018, an isolated instance of negligence is not sufficient to establish a finding of deliberate indifference. *See Gutierrez*, 111 F.3d at 1375; *Sanville v. McCaughtry*, 266 F.3d 724, 736 (7th Cir. 2001). Plaintiff argues that the medical personnel at Shawnee prescribed ibuprofen for his back pain and minerin cream for his skin condition on February 6, 2019, and that he underwent a new x-ray analysis, but there is no evidence that any doctor has recommended surgery or any form of treatment other than ice, rest, and pain management for his back pain. Without evidence that Plaintiff suffered any harm during the isolated interaction with Defendant on May 14, 2018, he is not entitled to any recovery. *See Gabb v. Wexford Health Sources, Inc.*, 945 F. 3d 1027, 1033-34 (7th Cir. 2019) (granting summary judgment to defendants related to back pain when there was no evidence plaintiff was harmed).

Even if Plaintiff's back and skin condition were considered objectively serious medical conditions, Defendant's single interaction with Plaintiff on May 14, 2018, does not rise to the level of deliberate indifference. There is no evidence that Defendant was aware he was suffering from an objectively serious medical condition or that he suffered any harm as a result of their isolated interaction on May 14, 2018. Therefore, summary judgment is granted in favor of Defendant.

**IT IS THEREFORE ORDERED:**

(1) Defendant's Motion for Summary Judgment [46] is GRANTED. This action is dismissed, with prejudice. Plaintiff takes nothing. The Clerk is directed to enter judgment and close this case.

(2) If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4).

(3) To proceed *in forma pauperis* on appeal, Plaintiff must file a motion to proceed on appeal *in forma pauperis* and identify the issues he will present on appeal to assist the Court in determining whether the appeal is taken in good faith. FED. R. APP. P. 24(a)(1)(c); *Celske v. Edwards*, 164 F.3d 396, 398 (7th Cir. 1999) (an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a responsible assessment of the issue of good faith."); *Walker v. O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000) (providing that a good faith appeal is an appeal that "a reasonable person could suppose . . . has some merit" from a legal perspective). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal.

Entered this 1st day of March, 2023.

s/ Michael M. Mihm
Michael M. Mihm
United States District Judge